## Case No. 14,931.

UNITED STATES v. DAVIS et al.

[2 N. Y. Leg. Obs. 35.]

Circuit Court, S. D. New York. Aug. 5, 1841.

LARCENY ON HIGH SEAS — CIRCUIT COURT JURISDICTION—INDICTMENT—WITNESS—TRIAL —PRESUMPTION.

1. Where prisoners were jointly indicted under the act of congress of 1790 (section 16), for grand larceny upon the high seas, it was *held* that the taking originally must be upon the high seas to convict the prisoners. [1 Stat. 116.]

2. If the jury believed that the taking was on board of the vessel while lying in the port of Savannah, in the state of Georgia, being one of the United States, the circuit courts of the United States of oyer and terminer, sitting in admiralty, had not jurisdiction of the offence.

3. Bringing the property stolen away from the port of Savannah to the port of New York, did not give the court jurisdiction, although brought on board of an American vessel and on the high seas.

4. The court, on motion of the prisoner's counsel, permitted the case of one of the prisoners to be submitted to the jury separate, so that he could be used as a witness in case he was found not guilty.

5. The prisoner was called after his acquittal, as to the point where the goods were originally taken,—whether on the high seas, or while the vessel lay at Savannah, in Georgia.

6. The court *held* that at the trial they would not stop the proceedings on the ground that the proof did not show a case clearly within the indictment, but that in case the prisoners were convicted, they might move in arrest of judgment for the variance.

7. The court also *held*, that an indictment charging the prisoners with stealing goods, the property of persons unknown, was sufficient, and that where proof was offered that goods had been stolen on board of a vessel on the high seas, consigned to a mercantile firm at the port where the vessel was bound, the proof would be sufficient to convict the prisoners.

8. If there was a reasonable presumption that the taking of the property was felonious and against the will of the true owner, though such owner were unknown, there were sufficient grounds to convict the prisoners.

This was an indictment [against Joshua Davis and John Hanlon] for grand larceny on the high seas, on board of the American brig Excel, belonging to the port of New York, under the act of congress of the United States, passed April 30, 1790 (section 16).

The indictment charged, that the prisoners, on the high seas, on board of said brig, took and carried away 3 pieces of kerseymere cloth, 14 pairs of boots, 22 silver spoons, 10 pieces of table linen, and other articles, of

the value of $300, the personal goods of the master of said vessel, or the owners thereof, or belonging to some person or persons to the jurors unknown. Plea, "not guilty.".

The prisoners were jointly indicted and tried together.

The district attorney called William Wendell, who testified that the brig Excel sailed from the port of New York for Savannah, in Georgia, and thence back to the port of New York. That the prisoners and another man by the name of Hobby, were seamen on board of said vessel. The goods stolen were consigned to Prince & Wylder, merchants in Savannah, Georgia. The witness further testified, that he did not know to whom the goods belonged, but they were a part of the cargo of the vessel. He saw Hobby, who was a seaman on board the brig, with a quantity of kerseymere, and also a number of silver table spoons, on shore at Savannah, trying to sell them. On the return voyage of the vessel, Davis told witness that he had been sadly cheated by Hanlon and Hobby, that they had broken open together the forehatch of the vessel, took a parcel containing three pieces of kerseymere, broke open a package and took out 14 pairs of boots, and from another box 22 silver spoons, a quantity of table linen, sheets and diapers, four knives, &c., and that they had only given him $10 for his share, when it was worth 2 or 300. Witness advised Davis to tell the captain, but he answered that he was afraid that Hanlon and Hobby would kill him if he did. Davis further told Wendell that part of the goods were now on board the vessel, in a box, and stated where they were placed. Previous to the arrival of the vessel at quarantine, New York, Wendell told the captain. The secreted goods were then drawn from their hiding place, and the two men arrested on their arrival here.

The master of the vessel for the voyage was next called as a witness, and testified that he had not been aware that any other goods than the kerseymere had been stolen, previous to Wendell's giving him the information. A bill for this had been presented at Savannah, amounting to $98. The packages from which the rest had been taken probably belonged to the country, and sufficient time had not elapsed to hear from them. He also stated, that the men were more likely to have stolen the goods while lying at Savannah than at sea. He further testified that the fact of the robbery having been committed was corroborated by the finding of a box in a house over the forehatch of the vessel, which box contained part of the stolen property, which had been brought back from Savannah to the port of New York, and was not discovered until the vessel arrived at quarantine, in New York, on her return voyage. The captain of the vessel testified that he knew nothing of the robbery by the prisoners until the witness Wen-

dell, to whom the alleged confession was made, informed him of it on the return voyage, about three days before the vessel arrived at quarantine, and that he had not until then known there was such a box on board the vessel.

At this stage of the case the prisoner's counsel contended that the confession of Davis should not be considered as evidence against him. It was given under circumstances of promise which were not good in law, and cited the case of People v. Thorn, reported in 4 City H. Rec. 81. Thorn, Livingston and Tracy, were indicted for a conspiracy to defraud the Merchants' Bank in the city of New York out of $100,000, when the government witness testified that he believed the confession of Thorn was made under the influence of the promise of making him a state's evidence.

The counsel for the prisoners also took another objection,—that it did not appear to whom the goods belonged by the evidence. The district attorney stated that he had no further evidence in the cause. The counsel for the prisoners insisted that they could not be convicted, as it was necessary to prove that the goods taken belonged to some person who had a real existence, and whose name should be correctly set forth in the indictment, and cited 2 Russ. Crimes, p. 162; Archb. Cr. Pl. 176. The counsel stated the indictment did not agree with the statute. The latter states that the goods taken must be personal property of another, whereas the indictment says that they belonged to some person or persons unknown, and "what evidence have we," said the counsel, "that the goods did not belong to the prisoners themselves?" The objections to the confessions of Davis were overruled by the court. The judge stated that in case the prisoners were convicted they could move in arrest of judgment on a case made for want of sufficient proof, should they be advised so to do; but was inclined to hold in the present stage of the case that the proof and the indictment charging the prisoners with stealing goods, the property of persons unknown, was sufficient, and declined to stop the trial.

The prisoners' counsel then stated that they wished to call Hanlon, one of the prisoners, as a witness in the cause, and moved that the case, so far as Hanlon, one of the prisoners, was concerned, might go to the jury separate. His honor, the judge, then permitted the counsel of the prisoner to submit his case on the evidence to the jury, who returned a verdict of not guilty. Hanlon was then put upon the stand, and was asked where it was that Davis took the goods, whether it was on the high seas or in the port of Savannah. The witness stated that he could not tell, for he knew nothing about it.

The prisoner's counsel then summed up to the jury, and argued that the weight of proof went to show that the robbery had

been committed at the town of Savannah, in Georgia, and that therefore this court had no jurisdiction in the premises, as the act of congress required that it should be proved the defendants had "taken and carried away the personal property of another person on the high seas," and that therefore the prisoner must be acquitted, even had he been morally guilty of the robbery, and asked the court to charge the jury that if they believed that the goods were originally taken while the vessel was in the port of Savannah, in Georgia. that this court had not jurisdiction to try the offence, and the prisoner must be acquitted on this ground. They urged that the act of congress of 1790 (section 16), under which the prisoner was indicted, did not confer jurisdiction upon this court for larcenies on board of vessels while they lay within the municipal jurisdiction of any state in the United States, or within the municipal jurisdiction of a foreign state.

THE COURT thereupon, after the summing up of the respective counsel, charged the jury: (1) That it must be proved to their satisfaction that a larceny had been committed, and if they believed the testimony in this cause, there could be no doubt on this point. (2) That it must have been committed on the high seas and on board of an American vessel; and it was a question of fact for them to determine from the evidence whether the property stolen had been taken while the vessel lay at the port of Savannah or upon the high seas. If they found that the goods were stolen while the vessel was on the high seas, they would be bound to convict the prisoners; but if the goods were taken while the vessel lay at the port of Savannah, in the state of Georgia, although the prisoner morally was guilty of the larceny, he could not be punished by this court, under the act of congress, as the statute had not conferred jurisdiction upon this court, and the jury would be bound under the latter hypothesis to acquit the prisoner.

The cause was then submitted to the jury, who retired and returned a verdict of "Not guilty," whereupon the prisoner was discharged.

Ogden Hoffman and F. Marbury, for the United States.

Nash, Noble, Price & Greasley, for prisoners.